IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ULTRASOUND IMAGING CORPORATION
and LARRY ZAGLIN,

     Plaintiffs,

v.

HYATT CORPORATION,

     Defendant.

FILED IN CHAMBERS
U.S.D.C. Atlanta

AUG 13 2007

JAMES N. HATTEN, Clerk
By:
Deputy Clerk

CIVIL ACTION NO.
1:06-CV-02778-JEC

## O R D E R   &   O P I N I O N

This case is presently before the Court on defendant's Motion to Dismiss [2] and plaintiffs' Request for Oral Hearing on Motion to Dismiss [11].  The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendant's motion to dismiss [2] should be **GRANTED in part and DENIED in part** and plaintiffs' Request for Oral Hearing on Motion to Dismiss [11] should be **DENIED**.

## **BACKGROUND**[1]

Plaintiffs Ultrasound Imaging Corporation ("Ultrasound Imaging") and Larry Zaglin ("Zaglin") (collectively "plaintiffs") filed a complaint against Hyatt Corporation ("Hyatt", "defendant") and HMC HT, LLC in the State Court of Gwinnett County seeking damages for defendants' alleged failure to honor plaintiffs' reservation for a particular hotel room at the Grand Hyatt Atlanta for three nights in May 2003. (Complaint "Compl." attach. as Ex. B to "Notice of Removal" [1].)[2] During the relevant time, Hyatt managed the Grand Hyatt Atlanta located at 3300 Peachtree Road, Atlanta Georgia (the "Hotel"). (Compl. [1] at ¶ 5.)

On or before March 28, 2003, Zaglin contacted the Hotel to inquire about renting a meeting space for May 1 – 4, 2003 for the purpose of holding a workshop to demonstrate Ultrasound Imaging's products. (Compl. at ¶ 6.) The Hotel informed Zaglin that its meeting and conference rooms were booked, but offered him the option of renting Suite 2106 at a discounted rate of $600 per night. (*Id.*

---

[1] As this case is before the Court on defendant's motion to dismiss, the following facts are taken from plaintiffs' complaint and, for the purposes of ruling on the motion, are assumed to be true.

[2] Plaintiffs previously filed a complaint in the Superior Court of Gwinnett County, which it voluntarily dismissed. ("County Court Compl." attach. as Ex. A to Notice of Removal [1].) Plaintiffs voluntarily dismissed, without prejudice, all claims against defendant HMC HT, LLC [4].

at ¶¶ 6-7.)   The Hotel also offered (1) to remove furniture that could inhibit traffic in and out of Suite 2106; (2) to provide catering for the suite; and (3) to produce and erect signs to be displayed in the Hotel lobby and other areas that would notify visitors of the details and location of plaintiffs' workshop.  (*Id.* at ¶ 7.)

Plaintiffs provided the Hotel with a Visa credit card number in order to hold the room.   (*Id.* at ¶ 8.)   The Hotel faxed a confirmation to Zaglin on March 28, 2003.   ("Hotel Confirmation" attach. as Ex. 1 to Compl.)   The Hotel Confirmation indicates that Suite 2106 was reserved in the name of "Lawrence Zaglin" for three nights commencing on May 1, 2003 at the rate of $600.00.   (*Id.*)   The Hotel Confirmation also noted that Zaglin would have to cancel his reservation by 4:00 pm, in order to avoid a one-night penalty.   (*Id.*) After reserving the room, plaintiffs prepared and forwarded a mass fax to the offices of approximately 30,000 physicians across the country providing the details of plaintiffs' event.   (Compl. at ¶ 10.)   Plaintiffs also entered into contracts with various individuals, including a breast surgeon, who was hired to make presentations during the scheduled event, and a catering service, which was hired to provide food and beverages for guests of the presentation. . (*Id.* at ¶¶ 11-12.)   In preparation of the event, plaintiffs prepared large signs to be displayed in the Hotel.   These

3

signs were approved by the Hotel, and the Hotel promised to place three signs in specified locations in the Hotel. (*Id.* at ¶ 13.)

On May 1, 2006 when Zaglin arrived at the Hotel to check in, the Hotel informed him that another guest was occupying Suite 2106 and that the guest refused to leave. (*Id.* at ¶ 14.) The Hotel informed plaintiffs that it did not have any other available suites or meeting rooms for plaintiffs. (*Id.*) Upon receiving this information, plaintiffs threatened to take immediate legal action, by filing a restraining order, to force the Hotel to make Suite 2106 available to plaintiffs. (*Id.* at ¶ 15.) Plaintiffs agreed not to take legal action, however, if the Hotel would arrange, and pay for, a room at the Embassy Suites on Peachtree Road and if the Hotel would maintain and display the three advertising signs in the designated areas of the Hotel. (*Id.*) After plaintiffs left the Hotel, the Hotel removed the signs.

Plaintiffs claim that defendant's acts and omissions give rise to the following claims (1) breach of contract; (2) promissory estoppel; (3) tortious interference with business relations; and (4) fraud. (Compl. [1]) Defendant filed a motion to dismiss ("Mot. to Dismiss" [2]) on November 22, 2006, which is now pending before this Court.

## I.   Motion to Dismiss Standard

In considering a defendant's motion to dismiss, the court

4

accepts the plaintiff's allegations as true, *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, *Duke v. Cleland,* 5 F.3d 1399, 1402 (11th Cir. 1993). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Ultimately, the complaint is required to contain "only enough facts to state a claim to relief that is plausible on its face," (*Id.* at 1974.)

## II. Plaintiffs' Breach of Contract Claim

Plaintiffs claim that defendant offered to rent Suite 2106 to Zaglin for three nights, that Zaglin accepted the offer, and that there was adequate consideration because plaintiffs provided a Visa credit card number, which would be charged a one-night penalty for failure to check-in by 4:00 pm on the date of Zaglin's scheduled arrival.[3] Under Georgia law, to constitute a valid contract "there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and

---

[3] Defendant argues that Ultrasound Imaging has no standing to assert a contract claim because the Hotel Confirmation identifies only Zaglin individually. However, Zaglin could have made the reservation on behalf of himself and Ultrasound Imaging. Accordingly, both Zaglin and Ultrasound Imaging have standing, at this juncture, to assert a contract claim.

AO 72A
(Rev.8/82)

a subject matter upon which the contract can operate." O.C.G.A. §
13-3-1.

Defendant does not dispute that plaintiffs' complaint alleges
the general elements of contract formation. Rather, defendant argues
that there can be no binding contract because the parties did not
satisfy the requirements of contract formation addressed under
O.C.G.A. § 43-21-3.2. That statute provides, as follows:

> 43-21-3.2 *Written statement of period of occupancy signed
> by guest; rights of innkeeper and guest under contract.*
>
> A written statement prominently setting forth **in bold type**
> the time period during which a guest may occupy an assigned
> room, when **separately signed or initialed by the guest**, is
> a valid nonassignable contract.  At the expiration of such
> time period, the guest may be restrained from entering such
> room and any property of the guest may be removed by the
> innkeeper to a secure place where the guest may recover his
> or her property without liability to the innkeeper, except
> for damages to or loss of such property attributable to its
> removal.  If a guest vacates his or her room prior to the
> date contained in the written statement, that guest shall
> not be liable for charges for the time after the room is
> vacated unless the guest has agreed otherwise before
> occupying the room.

(emphasis added).

Here, Zaglin provided the Hotel with a VISA credit card number
to hold Suite 2106 for the date in question, and the Hotel sent
Zaglin a written confirmation setting out the suite number (2106),
the number of nights stay (3), and the daily rate ($600).  Defendant
notes that the confirmation notice did not put the time period of the
room reservation in bold type and that plaintiff Zaglin did not sign

6

or initial this statement.  Accordingly, defendant contends that the parties did not comply with § 42-21-3.2 and, therefore, plaintiffs can bring no claim for the Hotel's breach of contract in denying the plaintiffs the suite that they had reserved.

The Court disagrees.  While O.C.G.A. § 43-21-3.2 specifies one method for forming a binding contract for a hotel room, nothing in the text or in any case law suggests that O.C.G.A. § 43-21-3.2 provides the exclusive method for forming an agreement to rent a hotel room at a specified time.  Rather, the Georgia statute merely spells out some, but certainly not all, rights and duties of innkeepers and guests when the parties decide to form a contract pursuant to that particular statute.  For example, if a guest attempts to overstay the time period reflected in the written statement, under a contract formed pursuant to the statute, the statute allows the innkeeper to remove the guest's belongings to a secure place.  The statute further sets out the innkeeper's potential liability and exemption from liability as a result of the removal of the guest's property.  Conversely, if a guest "understays" the time period reflected, by leaving early, the guest is not liable for any charges for the time period after the room is vacated unless he has agreed otherwise before occupying the room.  The statute is silent as to the way in which the guest may register his agreement to the latter condition.

7

Accordingly, the statute focuses on the legal rights of the innkeeper and guest when the latter attempts to overstay the agreed-upon time period for rental, or when the latter vacates his room prior to the expiration of the time period.  Nothing in the statute directly addresses the dispute at issue here: the rights of a guest who is denied access to his room after having otherwise entered into a contract to be provided that room for a designated period of time. That the statute does not endeavor to act as the exclusive method by which an innkeeper and guest may contract seems evident from its language.  Specifically, the statute provides that "**a** written statement" that complies with certain requirements "**is a** valid ... contract."  One can logically reason that had the statute been intended to provide the exclusive means by which to create a contract, it would have clearly indicated that fact.

Moreover, as noted, the statute addresses only one type of dispute that could arise between a guest and innkeeper: the ramifications of a guest's efforts to overstay his agreed-upon rental period or to leave early.  Indeed, following defendant's argument to its logical conclusion--that there is no contract unless the date is in bolded type and the guest has initialed the written form--the defendant would have been unable to charge the plaintiff's credit card for a night's stay, had Zaglin not shown up on the reserved date.  The Court doubts that defendant would acquiesce to such an

8

argument, in the above scenario.

Defendant also argues that a finding by the Court that O.C.G.A. § 43-21-3.2 is not the exclusive means by which to form a contract for a hotel room will render O.C.G.A. § 43-21-3.2 meaningless. The Court does not agree. As noted above, the statute merely states that "[a] written statement prominently setting forth in bold type the time period during which a guest may occupy an assigned room, when separately signed or initialed by the guest, is a valid nonassignable contract." Even if parties can form a contract for a hotel room without following O.C.G.A. § 43-21-3.2's requirements, it does not mean that the statute has no effect. Parties could still decide to form a contract pursuant to O.C.G.A. § 43-21-3.2 because the statute provides explicit rights and duties for innkeepers and guests. Some of these benefits and rights might not follow if the parties choose not to adhere to the requirements of O.C.G.A. § 43-21-3.2.

Defendant also relies on the traditional canon of statutory construction, *expressio unius est exclusio alterius*, and argues that, because the Georgia statute establishes one method for contracting to rent a specified hotel room, it must be the only method for forming such a contract. Defendant relies on *Rogers v. Frito-Lay, Inc.*, 611 F.2d 1074 (5th Cir. 1980) to support this argument. This former Fifth Circuit cases arises out of a very different legal issue and the Court does not find it sufficiently analogous to the present case

9

to warrant dismissal of plaintiffs' claim.

In *Rogers*, the Fifth Circuit determined that § 503 of the Rehabilitation Act does not contain an implied private right of action, meaning that individuals could not file a civil action in federal court seeking damages for a contractor's failure to "'take affirmative action to employ and advance in employment qualified handicapped individuals,'" as required by the Rehabilitation Act. *Id.* at 1077-78 (citing 29 U.S.C. § 793). In reaching this conclusion, the court examined a number of factors to determine whether Congress intended to create a private right of action when it enacted the Rehabilitation Act. *Id.* at 1078.

Defendant relies mainly on one aspect of this analysis: the court's statement that, because section 503 created an express administrative remedy, that fact provided the court with "at least some basis to conclude that a private right of action would be inconsistent with the purposes of the legislative scheme." *Id.* at 1084. The Fifth Circuit panel then cited the *expressio unius est exclusio alterius* maxim and, quoting from an earlier Supreme Court case, noted that "'where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it'" *Id.* at 1085 (internal citations and quotations omitted.)

The Court does not agree that the reasoning of the panel in *Rogers* requires the conclusion urged by the defendant. In *Rogers*,

the Fifth Circuit concluded that where a statute provided for a comprehensive administrative remedy and did not expressly create a private cause of action, no such private cause of action would be inferred as arising from the statute. Here, plaintiffs are not claiming any cause of action or right based upon O.C.G.A. § 43-21-3.2. Rather, plaintiffs assert a garden-variety breach of contract claim.    Under Georgia law, a contract may be formed by an offer, acceptance, able parties, and a subject matter on which the contract is based and consideration.  O.C.G.A. § 13-3-2.    That O.C.G.A. § 43-21-3.2 sets out the parties' rights and duties when a contract is formed in the manner specified by the statute does not necessarily mean that an otherwise valid contract, formed in a different way, cannot be enforced.

In summary, the Court concludes that plaintiffs' breach of contract may proceed, notwithstanding the purported contract's non-compliance with O.C.G.A § 43-21-3.2.

## III. Plaintiffs' Claim for Promissory Estoppel

In the alternative to plaintiffs' breach of contract claim, plaintiffs seek to recover under the equitable theory of promissory estoppel.[4]    Under Georgia law, to claim promissory estoppel, a

---

[4] A plaintiff can generally plead both promissory estoppel and breach of contract in the alternative.  *Am. Casual Dining, L.P. v. Moe's Southwest Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1371 (N.D. Ga. 2006) (citing FED. R. CIV. P. 8(e)(3), which allows a party to plead

11

plaintiff must show (1) that the defendant made a promise; (2) that the defendant should have expected that the plaintiff would rely on such a promise; and (3) that the plaintiff did, in fact, rely on the promise, to his or her detriment. *Adkins v. Cagle Foods JV, LLC*, 411 F.3d 1320, 1326 (11th Cir. 2005).

Defendant argues that plaintiffs seek to enforce a promise that plaintiffs did not articulate in their complaint.  The Court finds this argument to be a stretch.  Plaintiffs' complaint alleges that defendant promised to reserve Suite 2106 for Zaglin.  (Compl. at ¶ 8.)  Defendant attempts to recast plaintiff's claim by contending that plaintiffs do not actually seek to enforce this promise, but rather seek to enforce a promise "to provide Suite 2106 to Plaintiff Zaglin regardless of any extenuating circumstances, such as a guest extending its stay and refusing to leave the particular suite." (Mot. to Dismiss at 8.)  Contrary to defendant's recharacterization of the alleged "promise," there is no indication that plaintiffs are attempting to enforce any promise other than the one alluded to in their complaint: that is, defendant's promise to hold Zaglin's reservation. Plaintiffs, quite understandably, expected that if they made a reservation for a particular room for Zaglin, the room would be available when Zaglin showed up at the Hotel to check in.  As

_____

alternative and inconsistent theories of recovery).

12

Jerry Seinfeld[5] has insightfully noted: Anyone can take a reservation;

it's the holding of the reservation that's important.[6]  Plaintiffs

seek to enforce defendant's implied promise to hold the reservation.

Defendant also argues that plaintiffs cannot seek to enforce

this promise to reserve a hotel room because Georgia law precludes an

innkeeper from terminating a paying guest.  O.C.G.A. § 43-21-3.1.  As

noted, when Zaglin attempted to check into Suite 2106, the Hotel

informed him that a guest who had been occupying Suite 2106 decided

---

[5]  Jerome "Jerry" Seinfeld is a semi-fictional character on the sitcom *Seinfeld* (1989-1998), which role is played by the comedian of the same name.
    *See* http://en.wikipedia.org/wiki/Jerry_Seinfeld_(character) (2007).

[6]  "The Alternate Side," Episode No. 28, Season 3, *Seinfeld,* December 4, 1991.  The event triggering Jerry's observation is the failure of a rental car agency to have a car on hand, after Jerry had made a reservation, as follows.

Agent: I'm sorry, we have no mid-size available at the moment.

Jerry: I don't understand. I made a reservation.  Do you have my reservation?

Agent: Yes, we do; unfortunately, we ran out of cars.

Jerry: But the reservation keeps the car here.  That's why you have the reservation.

Agent: I know why we have reservations.

Jerry: I don't think you do.  If you did, I'd have a car.  See, you know how to take the reservation; you just don't know how to "hold" the reservation and that's really the most important part of the reservation, the holding.  Anybody can just take them.

13

to extend his stay.  Defendant now argues that it could not have forced the guest in Suite 2106 to leave without providing him notice under O.C.G.A. § 43-21-3.1.[7]  In relevant part, O.C.G.A. § 43-21-3.1 provides that "[w]henever the keeper of a hotel...wishes to terminate the occupancy of a guest for reasons other than those described in subsection (b) of this Code section, the keeper shall give notice of such intention to the guest." O.C.G.A. § 43-21-3.1(a).  The notice provided shall be equal to the time for which the guest paid and the keeper accepted payment for the occupancy.  *Id.*  Defendant contends that based on subsection (a) of this statute, it could not have promised Zaglin that it would hold Suite 2106 for him because such a promise would violate subsection (a).  Defendant cites *Hall v. Garden Services, Inc.*, 174 Ga. App. 856, 857 (1985) for the proposition that contracts entered into in contravention of law are void as against public policy.

Defendant's argument fails for two reasons.  First, defendant could have complied with O.C.G.A. § 43-21-3.1(a) by providing the guest staying in Suite 2106 with sufficient notice that he or she would have to vacate the room as of May 1, 2003.  Nothing prevented defendant from providing such notice, and defendant could have

_____

[7]   Plaintiffs do not contest the fact that a hotel guest occupying Suite 2106 decided to extend his stay into the time reserved by plaintiff.

14

thereby honored Zaglin's reservation, and not violated O.C.G.A. § 43-21-3.1.

Second, defendant's argument fails because subsection (a) of the aforementioned statute only applies if the termination of the occupancy is not "for cause."   O.C.G.A. § 43-21-3.1(a) and (b). Here, defendant's requirement that the guest leave Suite 2106 could arguably be considered "for cause" because the Hotel had another reservation to honor.   Interestingly, subsection (b) of the statute states that "for cause" reasons include "failure to have or maintain reservations."   There is reason to believe that the Suite 2106 guest occupying the room during the time of Zaglin's reservation did not have or maintain a reservation because Zaglin had a reservation for the same night.   If the holdover guest did not have a reservation, defendant had an explicit "for cause" grounds for terminating his or her occupancy without notice.   On the other hand, if the other guest also had a reservation, the Court questions the Hotel's reservation of the same expensive suite to two different individuals on the same night.   In any event, the Court concludes that the alleged promise could have been legally honored, and that plaintiffs have adequately pled the "promise" prong of their promissory estoppel claim.

Defendant, in a conclusory fashion, also states that plaintiffs cannot prove the remaining elements of their promissory estoppel claim.   Specifically, defendant contends that the complaint fails to

15

include any allegation that defendant expected, or should have expected, Zaglin to act on any promise to his detriment or that Zaglin surrendered any valuable right as a result of the alleged reservation.

The Court disagrees with this argument and concludes that plaintiffs adequately alleged the remaining elements of promissory estoppel. First, plaintiffs' complaint makes allegations which indicate that defendant should have expected plaintiffs to rely on the Hotel Confirmation. According to plaintiffs' complaint, defendant knew that plaintiffs wanted a large meeting room to demonstrate their products. (Compl. at ¶ 7.) Because the Hotel did not have any conference rooms available for the dates requested by plaintiff, the Hotel offered plaintiff Suite 2106 and also offered to remove all of the furniture from the Suite. (*Id.*) In addition, defendant agreed to provide catering and to manufacture and erect signs advertising plaintiffs' function. (*Id.*) Finally, and perhaps most importantly, the Hotel sent plaintiff a fax confirming Zaglin's stay at the Hotel. The facsimile cover page states "Attached is a copy of your confirmation sheet." (*Id.*)[8] Taking these allegations

---

[8] The Court may consider the Hotel Confirmation without converting defendant's motion to dismiss into one for summary judgment because "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes". Fed. R. Civ. P. 10(c). (Effective December 1, 2007, absent Congressional action, subsection (c) of this rule is amended to read as follows "A

16

as true, the Hotel should have expected that Zaglin would rely on the Hotel holding his reservation.

Finally, defendant's contention that plaintiffs failed to allege that they suffered any detriment based on their reliance is not convincing.  Plaintiffs' complaint states "As a result of the above actions, Plaintiffs suffered financial injury in the form of lost sales and damage to reputation.  Plaintiffs were left without an adequate meeting room because of Defendants [sic] acts and omissions."  (Compl. at ¶ 17.)  Thus, the Court concludes that the complaint adequately alleges each of the required elements of a claim for promissory estoppel under Georgia law.

## IV.  Plaintiffs' Claim for Tortious Interference with Business Relations

Plaintiffs allege that defendant's refusal to provide Suite 2106 to plaintiffs constituted "tortious interference with plaintiffs' business relations with members of the American Society of Breast Surgeons."  (*Id.* at ¶ 20.)   Plaintiffs further claim that they suffered financial injury, which included lost sales and damage to reputation as a result of defendant's failure to honor plaintiffs' reservation.  (Compl. at ¶ 17.)

Under Georgia law, in order to prove a claim for tortious

---

copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.")

17

interference with business relations, the claimant must prove that a party "(1) acted improperly and without privilege, (2) purposely and with malice with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff, and (4) for which the plaintiff suffered some financial injury." *DeLong Equip. Co. v. Washington Mills Abrasive Co.*, 887 F.2d 1499, 1518 (11th Cir. 1989) (internal citation and quotation omitted).

Defendant claims that plaintiffs failed to establish that defendant acted "improperly" or with "malice" as required for a claim of tortious interference under Georgia law.   While the Court concludes that plaintiffs sufficiently pled malice, it agrees with defendant that plaintiffs failed to allege that defendant acted "improperly" and without privilege.

Malice has been interpreted to mean any unauthorized interference or interference without legal justification or excuse. *Renden, Inc. v. Liberty Real Estate Ltd. P'ship III*, 213 Ga. App. 333, 334 (Ga. 1994).   Defendant argues that it acted with legal justification or excuse because O.C.G.A. § 43-21-3 requires an innkeeper to provide a potential guest with a hotel room only if one is available.   O.C.G.A. § 43-21-3.   O.C.G.A. § 43-21-3 states "An innkeeper who advertises himself as such is bound to receive as guests, so far as he can accommodate them, all persons of good

18

character who desire accommodation and who are willing to comply with his rules."  Because Suite 2106 was occupied by another guest when Zaglin arrived at the Hotel on May 1, 2003, defendant contends that it could not accommodate Zaglin, and, therefore, O.C.G.A. § 43-21-3 provided defendant with a defense for its refusal to honor Zaglin's reservation.

While the "so far as he can accommodate" language of O.C.G.A. § 43-21-3 provides a defense for an alleged violation of O.C.G.A. § 43-21-3, it does not necessarily provide a defense for defendant's action if defendant had previously made a legally binding promise to provide a specific room on a specific date.  In *Brown v. Hilton Hotels Corp.*, 133 Ga. App. 286, 289 (Ga. 1974), the court held that even though defendant had a defense to the Georgia statute requiring an innkeeper to accept as guests all persons of good character, because the innkeeper could not accommodate plaintiffs, plaintiffs could pursue recovery under a breach of contract theory.  Here, if plaintiffs ultimately demonstrate that the Hotel Reservation, and/or the course of dealing between plaintiffs and defendant, created an enforceable promise or binding contract for particular room, O.C.G.A. § 43-21-2 would not provide a legal basis for defendant's refusal to provide Zaglin with his bargained-for accommodations.  Furthermore, such a refusal could, indeed, amount to malice.

However, even if defendant's refusal to honor the reservation

19

amounted to malice, plaintiffs fail to allege that defendant acted improperly or by wrongful means. An essential element of a claim for tortious interference with business relations is that the alleged tortfeasor used wrongful means to induce a third-party not to enter into or continue a business relationship with the plaintiff. *See Camp v. Eichelkraut*, 246 Ga. App. 275, 279 (Ga. 2000). ("Wrongful" conduct generally involves predatory tactics such as "'physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits, and unwarranted criminal prosecutions.'") *Id.* at 279 ftn. 9 (internal citations and quotation omitted); *Culpepper v. Thompson*, 254 Ga. App. 569, 572 (2002) (improper actions constitute conduct that is wrongful in itself; thus, generally wrongful actions involve "'predatory tactics such as physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits, and unwarranted criminal prosecutions.'") (internal citation and quotation omitted.)

The Court concludes that plaintiffs have not sufficiently alleged that defendant engaged in any independent wrongful conduct. At most, plaintiffs allege that defendant's failure to honor Zaglin's reservation caused plaintiffs to suffer financial injury. Plaintiffs themselves characterize the wrongful conduct alleged in the complaint as "the Hotel's failure to follow through on all of its wonderful and accommodating promises." (Opp'n. to Mot. to Dismiss at

10.)   While defendant's conduct may have financially harmed plaintiffs, it was not "wrongful" in the tortious sense.   Under Georgia law, a tort action cannot be based on a breach of a contractual duty only, but must be based on conduct that not only breaches a duty imposed by contract, but also a duty imposed by law. *See Tidikis v. Network for Med. Commc'ns & Research LLC*, 274 Ga. App. 807, 812 (Ga. 2005) (internal quotation omitted.)   *See also Brown*, 133 Ga. App. at 288-289 (plaintiffs could only recover, if at all, for breach of contract, and not under tort law, for their claim that defendant failed to honor their guaranteed reservation.   The court found that defendant's failure to perform under the contract did not give rise to a tort action.)   (*Id.*)   Similarly, this Court concludes that plaintiffs' allegations that defendant Hyatt refused to honor Zaglin's reservation does not support plaintiffs' claim that defendant engaged in wrongful or tortious conduct.   Accordingly, the Court dismisses plaintiffs' claim for tortious interference with business relations

## IV. Plaintiffs' Claim for Fraud

Plaintiffs allege that defendant falsely represented that it would continue to advertise plaintiffs' workshop at the Hotel if plaintiffs accepted a room at the Embassy Suites and relented on their threat to pursue immediate legal action.   (Compl. at ¶¶ 15, 21.)   Specifically, plaintiffs state that plaintiffs agreed not to

21

pursue immediate injunctive relief if the Hotel would agree to arrange and pay for a room at the neighboring Embassy Suites and if the Hotel would maintain and display the three signs advertising the Ultrasound workshop at the three previously specified locations in the Hotel. (*Id.* at ¶ 15.) Plaintiffs further state that, after they set up their workshop at the Embassy Suites, the Hotel removed their advertising signs.

Defendant seeks to dismiss plaintiffs' claim for fraud under FED. R. CIV. P. 9(b), which requires that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." FED. R. CIV. P. 9(b) ("Rule 9(b)")[9]. The Eleventh Circuit has held that the heightened pleading requirement established by Rule 9(b) serves the "important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotation omitted). Rule 9(b) will be satisfied if the complaint sets forth "'(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and

---

[9]   Effective December 1, 2007, absent contrary Congressional action, this rule is amended to read as follows: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

22

place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.'" *Id.* (internal quotation omitted.)

Plaintiffs' complaint fails to comply with Rule 9(b)'s requirements for alleging fraud. It does not indicate who, if anyone, affirmatively agreed to maintain the three advertising signs at the Hotel. Furthermore, plaintiffs do not allege the content of any alleged false misrepresentations regarding the placement of plaintiffs' advertising signs. Finally, plaintiffs do not allege what defendant obtained as a consequence of the fraud. Accordingly, the Court concludes that plaintiffs have not adequately alleged fraud under Rule 9(b).

It should also be noted that, in order to allege fraud under Georgia common law, a plaintiff must prove the following five elements "'(1) false representation by defendant; (2) scienter; (3) intent to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff.'" *Next Century Communications Corp. v. Ellis*, 318 F.3d 1023, 1027 (11th Cir. 2003) (internal quotation and citation omitted.)

Here, it is not clear that plaintiffs alleged a false

23

representation.  In essence, plaintiffs allege that defendant failed to keep its promise to maintain and display plaintiffs advertising signs.   In order for a promise to constitute actionable fraud, plaintiff must demonstrate that the promisor had a present intent not to perform.  *Edwards v. Central Ga. HHS, Inc.*, 253 Ga. App. 304, 305 (Ga. 2002) (actionable fraud cannot be based on statements and promises to future events; there is an exception if the fraud may be predicated on a promise made with a present intent not to perform). Here, plaintiffs' complaint is bereft of any allegation that defendant possessed an intent not to maintain and display the three advertising signs at the time it agreed to post these signs.  Without such an allegation, plaintiffs' complaint fails to allege actionable fraud.[10]

The Court will therefore dismiss plaintiffs' fraud claim without prejudice, allowing plaintiffs, within **twenty (20)** days, to file an amended complaint correcting the above defects of the fraud claim.

---

[10]   Defendant argues that plaintiffs have not sufficiently pled reliance with respect to their fraud claim.   The Court does not agree.  Plaintiffs claim that they decided not to pursue immediate legal action, in the form of injunctive relief, in return for the Hotel's promise to maintain and display three advertising signs at previously specified locations in the Hotel.   (Compl. at ¶ 15.) Based on these allegations, if plaintiffs can specifically and adequately plead the other elements of fraud, the Court concludes that they have sufficiently pled reliance.

24

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** defendant's Motion to Dismiss [2] and **DENIES** plaintiffs' Request for Oral Hearing on Motion to Dismiss [11]. Plaintiff has **TWENTY (20) DAYS** to file an amended complaint that complies with Federal Rule of Civil Procedure 9(b). Defendant shall file an Answer, within **thirty (30) days** thereafter. Discovery shall commence within **thirty days** after that date and shall be allowed for a **six-month** period of time, as requested by the parties.

SO ORDERED, this _____ day of August, 2007.

_____
JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

25