IN THE UNITED STATES DISTRICT COURT FILED IN CHAMBERS
FOR THE NORTHERN DISTRICT OF GEORGIA U.S.D.C. Atlanta
ATLANTA DIVISION

SEP 2 2 2009

ULTRASOUND IMAGING CORPORATION
and LARRY ZAGLIN,
JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

       Plaintiffs,

CIVIL ACTION NO. 1:06-CV-2778

v.

HYATT CORPORATION,

       Defendant.

### ORDER AND OPINION

This case is presently before the Court on defendant's Motion for Summary Judgment [90]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendant's Motion for Summary Judgment [90] should be **GRANTED in part** and **DENIED in part**.

### BACKGROUND

Plaintiff Ultrasound Imaging Corporation ("Ultrasound Imaging") sells ultrasound imaging equipment, and plaintiff Larry Zaglin ("Zaglin") is the president of Ultrasound Imaging. Ultrasound Imaging and Zaglin (collectively "plaintiffs") filed a complaint against Hyatt Corporation ("Hyatt") and HMC HT, LLC in Gwinnett

AO 72A
(Rev.8/82)

County Superior Court, which was removed to this Court.[1]  (*See* "Compl.," attached as Ex. B to Notice of Removal [1].)  During the relevant time period, Hyatt managed the Grand Hyatt Atlanta ("Hotel"), located at 3300 Peachtree Road, Atlanta, Georgia.  (Compl. at ¶¶ 4, 5.)  Plaintiffs seek damages for defendant's failure to honor plaintiffs' reservation for a room in the Hotel for three nights in May 2003.  (*Id.* at ¶¶ 6, 22.)

On or before March 28, 2003, Zaglin contacted the Hotel to inquire about renting a meeting space on May 1-4, 2003 to hold a workshop and demonstrate Ultrasound Imaging's products during an American Society of Breast Surgeons (ASBS) conference that was taking place at that time.  (*Id.* at ¶ 6; Am. Compl. [20] at ¶ 2.)  Plaintiffs were not members or recommended vendors of the ASBS.  Indeed, plaintiffs are considered to be competitors of the ASBS's recommended vendors and had previously been denied a spot at the conference.[2]  (Am. Compl. [20] at ¶ 2; Mot. for Summ. J. [90] at 3.)

A Hotel employee told Zaglin that all its conference and meeting rooms were booked, but the Hotel gave him the option to rent Suite 2106 at a discounted rate of $600 per night.  (*See* Compl. at ¶¶ 6-7.)

---

[1]  Plaintiffs have voluntarily dismissed, without prejudice, all claims against HMC HT, LLC.  (*See* Notice of Voluntary Dismissal [4]).

[2]  Plaintiffs also note that their prices are significantly less, usually fifty to seventy-six percent less, than major competitors, implying its reduced prices are a reason the ASBS did not want them there.  (County Court Compl. at ¶ 11.)

AO 72A
(Rev.8/82)

The Hotel stated that it would: (1) remove furniture that would inhibit traffic in and out of Suite 2106; (2) provide catering for the suite; and (3) produce and erect signs to be displayed in the Hotel lobby and other areas that would notify visitors of the details and location of plaintiffs' workshop. (*Id.* at ¶ 7.)

To hold the room, Zaglin gave the Hotel his Visa credit card number and agreed that if he did not show up by 4:00 p.m. on the day of his scheduled arrival, his credit card would be charged a one-night penalty. (*Id.* at ¶¶ 8, 9.) The Hotel faxed a confirmation to Zaglin on March 28, 2003. (*Id.* at Ex. 1.) This confirmation (the "First Contract") states that Suite 2106 was reserved in the name of "Lawrence Zaglin" for three nights, beginning on May 1, 2003, at the rate of $600.00 a night. (*Id.*)

After reserving the room, plaintiffs prepared and forwarded a mass fax to the offices of approximately 30,000 physicians across the country that provided the details of plaintiffs' workshop. (Compl. at ¶ 10.) Plaintiffs also entered into contracts with various individuals, including a breast surgeon whom plaintiffs hired to make presentations during the event and a catering service that plaintiffs hired to provide food and beverages for guests of the presentation. (*Id.* at ¶¶ 11-12.) Plaintiffs prepared three large signs to be displayed in the Hotel. (*Id.* at ¶ 13.) The Hotel approved the signs and promised to place them in specified locations in the Hotel.

3

(*Id.*)

On May 1, 2003, when Zaglin arrived at the Hotel to check in, the Hotel informed him that another guest was occupying Suite 2106 and that the guest refused to leave. (*Id.* at ¶ 14.) This guest was Dr. Richard Fine, then president of the ASBS. (Am. Compl. [20] at ¶ 5.) He initially had rented the room for only two nights, April 29 to May 1, 2003, but he extended his stay in Suite 2106 just prior to the arrival of Zaglin. (*Id.*; Pls.' Resp. to Def.'s Statement of Facts [97] at ¶ 42.) Plaintiffs state that Zaglin overheard the Hotel general manager state, "[The ASBS doesn't] like [Zaglin], they don't want him." (Am. Compl. [20] at ¶ 7.) A Hotel employee also wrote on Dr. Fine's reservation: "Mr. Fine must have this lux suite do not move [sic]." (Pls.' Resp. to Def.'s Statement of Facts [97] at ¶ 44.) Plaintiffs suggest that Dr. Fine rented the suite to prevent Zaglin from being able to sell his products at the conference. (Am. Compl. [20] at ¶ 12.)

The Hotel informed Zaglin that it did not have any other available suites or meeting rooms for plaintiffs.[3] (*Id.* at ¶ 7.) Zaglin threatened to take immediate legal action in the form of a restraining order to force the Hotel to make Suite 2106 available to plaintiffs. (*Id.* at ¶ 14.) On the next morning, May 2, after

---

[3] Plaintiffs state that another suite was available that could have been used. (Pls.' Resp. to Def.'s Statement of Facts [97] at ¶ 8.)

4

extensive conversations with Hotel management, plaintiffs agreed not to take legal action only if the Hotel would: (1) arrange and pay for a room at a nearby Embassy Suites on Peachtree Road and (2) maintain and display the three advertising signs in the designated areas of the Hotel (the "Second Contract"). (*Id.*) Tom Boss, the Hotel general manager, told Zaglin, "I will make sure the signs are up." (Am. Compl. [20] at ¶ 8.)

Because no one was attending Ultrasound Imaging's workshop at Embassy Suites on the afternoon of May 2, Zaglin returned to the Hotel and found that the signs had been taken down. (*Id.* at ¶ 9.) Boss told him, "We are having problems with the breast surgeons. Don't worry, we'll take the heat and make sure your signs are displayed." (*Id.*) The signs that had been taken down were being stored in a private hallway that was only accessible to Hotel employees via a code.[4] (Pls.' Resp. to Def.'s Statement of Facts [97] at ¶¶ 14-16.)

After Boss told Zaglin the signs would be put back up, Zaglin returned to the Hotel later that afternoon and found the signs were still not displayed. (Am. Compl. [20] at ¶ 10.) Hotel security told him that Dr. Fine had made a complaint to the police and had asked

---

[4] At another point during the day, a Hotel security employee told Zaglin, "The signs was [sic] coming down," after which the signs were taken down and stored in the security office. (Pls.' Resp. to Def.'s Statement of Facts [97] at ¶ 15.)

5

Boss to keep Zaglin out of the Hotel. Boss told Zaglin not to return to the Hotel for a year, or he would be charged with criminal trespass. (*Id.*) Plaintiffs state that the Hotel's purpose in taking down the signs was to "appease" Dr. Fine and the other doctors providing the Hotel with their business. (*Id.* at ¶ 12.) Ultimately, only five breast surgeons attended Ultrasound Imaging's presentation, and Ultrasound Imaging made only one sale.[5] (County Court Compl. at ¶ 39; Opp'n to Mot. for Summ. J. [93] at 3.)

Plaintiffs claimed that defendant's acts and omissions give rise to: (1) breach of contract with regard to the First Contract and the Second Contract; (2) promissory estoppel with regard to the First Contract; (3) tortious interference with business relations; and (4) fraud with regard to the Second Contract. (Compl. at ¶¶ 18-19, 21.) On November 22, 2006, defendant filed a Motion to Dismiss [2]. On August 13, 2007, the Court dismissed the tortious interference claim, but it denied the Motion to Dismiss [2] as to the other claims, and directed plaintiff to amend its fraud claim. (*See* Aug. 13, 2007 Order [18] at 21, 24-25.) On January 8, 2009, defendant filed a Motion for Summary Judgment [90], which is now pending before the Court.

---

[5] Plaintiff avers that, in comparable shows, he had made five to ten sales. (Pls.' Resp. to Def.'s Statement of Facts [97] at ¶ 32.)

AO 72A
(Rev.8/82)

## DISCUSSION

### I.  Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  A fact's materiality is determined by the controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant.  *Id.*

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits.  Instead, Rule 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); FED. R. CIV. P. 56(c).  In such a situation, there can be "no genuine issue as to any material fact," as "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.*, 477 U.S. at 323 (quoting FED. R. CIV. P. 56(c)) (internal quotation marks omitted).

7

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323. However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the movant has carried his burden, the nonmoving party is then required to "go beyond the pleadings" and present competent evidence designating "'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting FED. R. CIV. P. 56(e)). While the court is to view all evidence and factual inferences in a light most favorable to the nonmoving party, *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48.

## II. **Plaintiffs' Breach of Contract Claim As to the First Contract**

As noted, the "First Contract" refers to defendant's agreement to rent Suite 2106 of the Hyatt Hotel to plaintiffs on May 1-4, 2003 for $600 per night. Upon the defendant's failure to honor this first agreement, on May 2, it agreed to arrange and pay for a room at a nearby Embassy Suites and to display, in the designated areas of the Hyatt, three advertising signs directing interested attendees to

plaintiffs' new location. This second agreement constitutes the "Second Contract." Plaintiffs allege that defendant breached both contracts. The Court first addresses defendant's challenge to plaintiff Zaglin's standing, which challenge applies to both contracts, and then proceeds to address the other issues pertaining to defendant's challenge of the First Contract.

### A.   Standing

As noted, Zaglin's name is the only name on the Hotel Confirmation. (Compl. at Ex. 1.) Defendant asserts that Zaglin does not have standing to sue, however, because Zaglin intended to contract with Hyatt only in his representative capacity and is therefore not a party to either contract.[6]   (See Mot. for Summ. J. [90] at 11.) Defendant therefore seeks summary judgment with regard to Zaglin's claim on this First Contract.

Interestingly, this argument is directly contrary to the argument defendant propounded, and this Court rejected, earlier in this case, when defendant contended that Ultrasound Imaging had no standing to assert a contract claim because the Hotel Confirmation

---

[6] Defendant bases much of this argument on the fact that, in his deposition testimony, Zaglin indicated his uncertainty as to whether he should be deemed a party to the First Contract. (See Mot. for Summ. J. [90] at 5.)  However, Zaglin, who is not an attorney, also testified that he was unsure of the legal effect of his actions in making the reservation, so his testimony on this subject cannot be dispositive.   (See Pls.' Resp. to Def.'s Statement of Facts [97] at ¶ 20.)

identified only Zaglin, not Ultrasound Imaging.[7]   In rejecting defendant's argument, the Court indicated that Zaglin could have made the reservation on behalf of both himself and Ultrasound Imaging, and concluded, preliminarily, that both had standing. (*See* Aug. 13, 2007 Order [18] at 5 n.3.)

Because of the Court's previous ruling, defendant appears to have switched targets for its standing challenge in the present summary judgment motion.   Indeed, until this Motion for Summary Judgment [90], Hyatt had denied that Ultrasound made a reservation and had admitted that Zaglin did make a reservation.   (*See* Pls.' Resp. to Def.'s Statement of Facts [97] at ¶ 46.)   Further, Zaglin has offered to dismiss his individual claims if defendant would concede that the reservation agreement is attributable to Ultrasound; defendant would not do so.   (*See* Opp'n to Mot. for Summ. J. [93] at 8.)   In short, defendant appears to want to eliminate one plaintiff at the summary judgment stage so that, at trial, defendant will then be free to argue that the remaining plaintiff also lacks standing.

Defendant has not offered any legal discussion concerning the requirements for standing.   Instead, it relies solely on Zaglin's testimony regarding his own belief as to whom the party to the contract might have been.   The conjecture of a layman such as Zaglin,

---

[7]   Defendant even notes in its Motion for Summary Judgment that Ultrasound Imaging's name is not on the reservation.   (Mot. for Summ. J. [90] at 19.)

AO 72A
(Rev.8/82)

however, does not help the Court a whit in trying to decide a question that is largely a legal one. Suffice it to say that between Zaglin and Ultrasound, at least one of these two was a party to the contract and has standing to sue. Further, only one recovery will be awarded for any particular claim, no matter the number of plaintiffs attached to that claim. The Court will sort out which plaintiff's name shall go on the verdict form, hopefully with the cooperation of defendant, by the time the case is presented to the jury.

Therefore, the Court **DENIES** defendant's motion for summary judgment against plaintiff Zaglin based on Zaglin's alleged lack of standing.

### B. The First Contract Is Enforceable.

Defendant does not dispute that the First Contract, the Hotel confirmation, fulfills the general elements of contract formation, which requires an offer, an acceptance, and consideration. *See* GA. CODE ANN. § 13-3-1 ("To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate"). Defendant offered to rent Suite 2106 for three nights; Zaglin accepted the offer; and adequate consideration existed in the form of the credit card number, provided by Zaglin, that would be charged a one-night penalty upon a failure to check in on the date of his scheduled arrival.

11

Instead, defendant relies on GA. CODE ANN. § 43-21-3.2 in arguing that plaintiffs' registration did not create an enforceable contract. Section 43-21-3.2 provides that an innkeeper and guest create a contract when there is: (1) a written statement prominently setting forth in bold type the time period during which a guest may occupy an assigned room, which statement (2) is separately signed or initialed by the guest.[8] Defendant states that this statute provides the exclusive method for forming a contract for a hotel room for a specific time and, because plaintiffs did not initial the statement and because the time period was not written in bold type, there was no contract. (Mot. for Summ. J. [90] at 20-21.)

The Court previously rejected this argument when it considered defendant's Motion to Dismiss [2], and defendant even acknowledges that this argument was previously rejected. (See Mot. for Summ. J. [90] at 20 n.8.) In rejecting the argument, the Court wrote that "[w]hile [GA. CODE ANN.] § 43-21-3.2 specifies one method for forming a binding contract for a hotel room, nothing in the text or in any case law suggests that [GA. CODE ANN.] § 43-21-3.2 provides the exclusive method for forming an agreement to rent a hotel room at a

---

[8] The statute provides: "A written statement prominently setting forth in bold type the time period during which a guest may occupy an assigned room, when separately signed or initialed by the guest, is a valid nonassignable contract." GA. CODE ANN. § 43-21-3.2.

12

specified time." (Aug. 8, 2007 Order [18] at 7.)[9]

Defendant argues that the Court should revisit this issue based on the "extensive record developed during discovery." (Mot. for Summ. J. [90] at 20 n.8.) Yet, because this argument is purely a legal one, the factual record is completely irrelevant. Further, defendant never explains in what way the factual record supports its argument. As it ruled before, the Court again rejects this argument and concludes that the First Contract between the parties is enforceable.

Defendant also revisits another losing argument when it argues that any promise to reserve a room for Zaglin was unenforceable as such a promise would have required defendant to violate the law. This argument relies on a Georgia statute that prohibits a hotel from evicting a paying guest without providing notice equal to the period of time of occupancy for which the guest has paid. *See* GA. CODE ANN. § 43-21-3.1(a) ("[w]henever the keeper of a hotel . . . wishes to terminate the occupancy of a guest for reasons other than those described in subsection (b) of this Code section, the keeper shall give notice of such intention to the guest.")

As the Court wrote in its August 13, 2007 Order [18], this argument fails because (1) defendant could have provided notice and

---

[9] The entire analysis is found at pages 5-11 of the August 13, 2007 Order [18].

13

(2) the statute only applies if the termination of the occupancy is not "for cause." Here, the "termination" of Dr. Fine from the suite would have been "for cause" because Zaglin had a reservation. (*See* Aug. 13, 2008 Order [18] at 14-15.) In fact, GA. CODE ANN. § 43-21-3.1(b) lists one "for cause" reason as "failure to have or maintain reservations." Clearly, Dr. Fine did not have a reservation for the suite on the night in question, as Zaglin was the reserved guest.

Therefore, once again, the defendant has wasted the Court's time by repeating an argument that has previously been rejected and has no chance of success. For all the above reasons, the Court **DENIES** defendant's Motion for Summary Judgment [90] based on the ground that the First Contract was unenforceable.

## C.  Defendant's Accord and Satisfaction Defense Fails

Defendant argues that the First Contract between the parties was replaced with the Second Contract and that therefore the doctrine of accord and satisfaction applies to nullify and void the First Contract. (*See* Mot. for Summ. J. [90] at 17.)

An accord and satisfaction, or novation, "is in itself a contract and must have all the elements of a de novo contract." *Britt/Paulk Ins. Agency, Inc. v. Vandroff Ins. Agency, Inc.*, 952 F. Supp. 1575, 1580 (N.D. Ga. 1996) (citations omitted). To prove "a valid accord and satisfaction or novation," a party must show: "(1) a previous valid obligation; (2) the agreement of all the parties to

14

the new contract; (3) a mutual intention by the parties to substitute the new contract for the old one; and (4) a valid new contract." *Munson v. Strategis Asset Valuation and Mgmt., Inc.*, 363 F. Supp. 2d 1377, 1381 (N.D. Ga. 2005) (citation omitted). If any one of these elements is lacking, there is no accord and satisfaction. *Mil-Spec Indus. Corp. v. Pyrotechnic Specialties, Inc.*, 262 Ga. App. 582, 585 (2003).

Defendant cannot prove the third element: "a mutual intention by the parties to substitute the new contract for the old one." *Munson*, 363 F. Supp. 2d at 1381. The parties entered into the Second Contract in order to avoid litigation on plaintiffs' threat to seek a restraining order in state court to force defendant to provide Suite 2106 to plaintiffs. (*See* Opp'n to Mot. for Summ. J. [93] at 15.) Defendant provides no evidence that the plaintiffs intended the Second Contract to substitute the First Contract.

Further, the First Contract had already been breached by the time of the entry of the Second Contract, and plaintiffs never waived their claims for damages resulting from that breach. Defendant has produced no evidence that the Second Contract was intended to be a settlement of the breach of the First Contract. Oral settlement agreements can be "enforceable if their existence is established without dispute, but where the very existence of the agreement is disputed, it may only be established by a writing." *See Walker v.*

15

*Lewis*, 267 Ga. App. 831, 831 (2004). Here, there is clearly a dispute that plaintiffs intended for the Second Contract to constitute a settlement for defendant's breach of the First Contract.

In short, accord and satisfaction is an affirmative defense for which defendant bears the burden of proof. *See Int'l Stamp Art, Inc. v. U.S. Postal Serv.*, 456 F.3d 1270, 1274 (11th Cir. 2006). Defendant has offered only conclusory allegations and provided no evidence to support this burden of proof. Therefore, defendant's Motion for Summary Judgment [90] based on this affirmative defense is **DENIED**.

### D.    **Damages**

#### 1.    Lost Profits

Defendant spends much of its Motion for Summary Judgment [90] arguing that plaintiffs have no provable damages[10] and that summary judgment should therefore be granted. (*See, e.g.*, Mot. for Summ. J. [90] at 1-2, 5-11, 18-19.) Specifically, defendant contends, at great length, that plaintiffs have not elicited sufficient evidence to allow a claim for lost profits to go forward. From that premise,

---

[10]    Defendant also argues that plaintiffs should have mitigated their damages by simply moving to an offered guest room at the Hotel because "size [was] the only difference between the rooms." (*See* Mot. for Summ. J. [90] at 23 n.10.) This argument is not persuasive, as size is the relevant consideration in this analysis; for plaintiffs to display their products, they had to have an appropriately sized room.

defendant contends that plaintiffs cannot proceed on their breach of contract claims.

Defendant's argument, however, is very misleading, as defendant persists in ignoring two important facts. First, one does not have to prove damages to prevail on a contract claim under Georgia law and, even if one did have to prove damages, plaintiffs have not only alleged lost profits, but have also sought actual damages and nominal damages. As to the law governing contract claims, in every breach of contract case, the plaintiff has a right to damages. GA. CODE ANN. § 13-6-6.[11] The potential recovery of nominal damages is sufficient to preclude summary judgment. *Poe v. Sears, Roebuck & Co.*, 1 F. Supp. 2d 1472, 1477 (N.D. Ga. 1998), citing *Bishop v. Int'l Paper Co.*, 174 Ga. App. 863, 864 (1985) (In a claim for breach of a settlement agreement, "a plaintiff's right to recover nominal damages depends only upon whether the defendant's liability [has] been established.") (internal quotation marks and emphasis omitted.)

Second, defendant continues to ignore the fact that plaintiffs seek more than $6,600 in actual damages, in addition to lost profits and nominal damages. (Mot. for Summ. J. [90] at 9.) Against this legal and factual backdrop, defendant has cited only two cases,

---

[11] "In every case of breach of contract the injured party has a right to damages, but if there has been actual damage, the injured party may recover nominal damages sufficient to cover the costs of bringing the action." GA. CODE ANN. § 13-6-6.

17

neither of which pertain to a contract claim or to the question whether nominal damages are sufficient, by themselves, to allow such a claim to go forward. (See Def.'s Reply in Supp. of Mot. for Summ. J. [100] at 5 n.4.)

As to the merits of a claim for lost profits, the Court cannot ascertain, from the confusing descriptions of the evidence made by the parties, whether plaintiffs have adduced sufficient evidence to allow this claim to proceed. Should defendant wish to prevent a lost profits claim from going to the jury, it should file a pretrial motion *in limine* to that effect. Any such motion, or response, will need to lay out, more clearly than does the present briefing, the standards for succeeding on such a claim and the evidence in support of the claim.

### 2.    Foreseeability of Damages

Defendant has argued that the damages here were not foreseeable. (Mot. for Summ. J. [90] at 18.)   Plaintiffs do not dispute that damages must be foreseeable to be recovered, but they contend that damages were foreseeable in this case.  The Court agrees.

Defendant argues that it could not have foreseen that Ultrasound Imaging would have lost profits on lost sales of equipment, upon cancellation of the reservation for the suite, because Ultrasound's name was not on the First Contract. (See Mot. for Summ. J. [90] at

18

19.) This assertion is contradicted by the evidence, which the Court must take in the light most favorable to the plaintiffs. Specifically, Zaglin met with Hotel employees in January 2003 to look at suites and specifically discussed how he intended to use Suite 2106. (*See* Pls.' Resp. to Def.'s Statement of Facts [97] at ¶ 47.) He also met with Hotel employees in April 2003 to discuss catering and use of signs that specifically said, "We sell." (*Id.* at ¶ 48.)

Accordingly, defendant has not demonstrated, as a matter of law, that defendant was unable to foresee that plaintiffs would lose profits should the defendant breach its agreement and deprive the plaintiff of the suite that it had contracted to provide. Therefore, defendant's motion for summary judgment on this issue is also **DENIED**.

III. **Breach of Contract Claim as to Second Contract**

    **A.    The Second Contract Was Enforceable.**

The Second Contract arose after defendant's refusal to give the plaintiffs the agreed-upon suite and represents the agreement of the defendant: (1) to provide plaintiffs a room at Embassy Suites and (2) to display signs at the Hyatt directing potential customers to the Embassy Suites site. Defendant made these promises in exchange for plaintiffs' agreement not to file an immediate lawsuit seeking to enjoin defendant from refusing to comply with its contractual obligations.

19

Defendant argues that this Second Contract lacks consideration and thus does not constitute a valid contract. *See* GA. CODE ANN. § 13-3-1. Plaintiffs respond that the consideration they provided was their forbearance from seeking an injunction to evict Dr. Fine from the suite that had been promised to plaintiffs.[12] (Opp'n to Mot. for Summ. J. [93] at 19.) Forbearance to prosecute a legal claim has widely been found to be sufficient consideration to support a contract. *Jenkins v. Sallie Mae, Inc.*, 286 Ga. App. 502, 506 (2007). Defendant argues, though, that the Second Contract lacks consideration because the injunction would not have been granted. (*See* Mot. for Summ. J. [90] at 22-23.) Forbearance to prosecute a lawsuit is generally held to be sufficient consideration, however, whether or not the suit or defense would have been successful. *Lankford v. Irby*, No. 04-2636, 2006 WL 2828552, at *6 (D.N.J. Sept. 29, 2006) (finding that forbearance to prosecute a lawsuit is sufficient consideration, regardless of whether the defense would have been successful). Therefore, defendant's arguments that the injunction would not have been granted are of no moment in deciding whether there was consideration for the contract. (*See* Mot. for Summ. J. [90] at 23.)

_____

[12] Ample case law on this topic exists, though plaintiffs cite none to support their claims.

**B. A Genuine Issue of Material Fact Exists As to Whether the Second Contract Was Breached**

Because the Second Contract is an enforceable contract, the question for the Court is whether a "genuine issue of material fact" exists as to whether defendant failed to display the signs and thereby breached the contract. Defendant argues that it did not breach the Second Contract because it displayed plaintiffs' signs, as it stated it would do. As to plaintiffs' claims that the signs were removed numerous times, defendant states that Hotel employees did not remove the signs. (Mot. for Summ. J. [90] at 4 n.2.)

Defendant is incorrect when it asserts, as an undisputed fact, that defendant displayed plaintiffs' signs. (*See* Mot. for Summ. J. [90] at 13.) In fact, defendant quotes a deposition in which a party states that Hotel employees "returned the signs" after the first alleged removal, essentially acknowledging that the signs were not always displayed. (*See* Reply in Supp. of Mot. for Summ. J. [100] at 9.) Another Hotel employee stated that he "probably" told Zaglin that the signs were coming down. (*Id.*)

Defendant will presumably argue at trial that it did not take down the signs, but that third parties did so. The evidence at this juncture, however, appears sufficient to allow a jury to conclude that defendant either took the signs down or acquiesced in the

21

actions of a third party in removing the signs. Therefore, a "genuine issue of material fact" exists as to whether defendant acted in a way that breached the Second Contract.[13]

Therefore, defendant's Motion for Summary Judgment [90] is **DENIED** as to the second breach of contract claim.

## IV. <u>Plaintiffs' Promissory Estoppel Claim</u>

Plaintiffs have also asserted a promissory estoppel claim. In their briefing, the defendant indicates that the promissory estoppel claim pertains to the allegedly broken promise that pertains to the Second Contract: that is, defendant's promise to post signs alerting attendees that plaintiffs' site had moved to the Embassy Suites Hotel. Plaintiffs contend that the estoppel claim pertains to the promise underlying the First Contract: defendant's failure to honor

---

[13] Defendant also argues that damages were not foreseeable because "Hyatt could not have contemplated that others would interfere with the display of the signs." (*See* Reply in Supp. of Mot. for Summ. J. [100] at 13-14.) Defendant is confusing the forseeability of damages as a result of a breach of the contract with the issue of causation as to the removal of the signs. Whether or not third parties removed the signs and whether defendant can be held accountable for that conduct, through its acquiescence, will decide the question whether there was a breach of the contract. That poses a different inquiry than the question whether defendant would have been on notice that removal of the signs could damage plaintiffs. Obviously, defendants knew that if attendees were unaware of plaintiffs' site, these guests would be unable to visit that site to purchase machinery. That consequence very obviously could result in damages to the plaintiffs.

its original promise to provide plaintiffs with Suite 2106.

While defendant could, and did, plausibly express some confusion early in the litigation as to the subject of the promissory estoppel claim, given the arguable ambiguity of the wording of the Complaint, defendant's professed perplexity at this late date now seems quite contrived. Plaintiffs have indicated that this claim pertains only to the promises underlying the First Contract, not the second. Moreover, the Court dealt with this matter in its Order denying defendant's motion to dismiss [18], in which the Court made clear that it was construing the promissory estoppel claim as being related to the first promise regarding the suite. (*Id.* at 12-13.) Thus, once again, defendant's *deja vu* approach to this litigation has caused the Court to needlessly expend its time responding to defense contentions that have long ago been resolved.

Plaintiffs' promissory estoppel claim poses an alternative theory of recovery to the breach of contract claim. In other words, plaintiffs can only prevail on one of these two theories. Under certain circumstances, a plaintiff can plead both a breach of contract claim and a promissory estoppel, in the alternative. Indeed, FED. R. CIV. P. 8(e)(2) allows a party to plead alternative and inconsistent theories of recovery. *See Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1371 (N.D. Ga. 2006)

23

AO 72A
(Rev.8/82)

Nevertheless, when the promise underlying the estoppel claim is the same promise that has been alleged to have been breached in the contract claim <u>and</u> when neither party disputes the existence of a valid contract, the doctrine of promissory estoppel does not apply, even when it is asserted in the alternative. *Id. Cf. West, LLC v. Compass Environmental, Inc.*, 509 F.Supp. 1353, 1363 (acknowledging case authority which holds that, with regard to a claim of breach of contract and an alternative equitable theory, such as promissory estoppel, it is inappropriate to dismiss the alternative theory, pretrial; instead, the court must insure that recovery <u>at trial</u> is limited to just one theory).

Defendant, here, does not dispute plaintiffs' right to assert both a breach of contract claim and a promissory estoppel claim. Plaintiffs will, however, be allowed to recover only under one of the two theories. As to the elements of a promissory estoppel claim, a plaintiff must show:  (1) that the defendant made a promise; (2) that the defendant should have expected that the plaintiff would rely on such a promise; and (3) that the plaintiff did, in fact, rely on the promise, to his or her detriment. *Adkins v. Cagle Foods JV, LLC*, 411 F.3d 1320, 1326 (11th Cir. 2005).

Regarding the merits of the estoppel claim, because defendant has persisted in casting the estoppel claim as one relating to the

AO 72A
(Rev.8/82)

promises related to the second contract, defendant has not addressed the promissory estoppel claim with regard to its actual object: the promises underlying the First Contract. As the latter represents plaintiffs' promissory estoppel claim, defendant has necessarily failed to present evidence or legal argument that would entitle it to summary judgment on this claim. Accordingly, defendant's motion for summary judgment on plaintiff's promissory estoppel claim is also **DENIED**.

## V. **Plaintiffs' Fraud Claim**

Plaintiffs bring a fraud claim with regard to the Second Contract. (Compl. at ¶ 21.) Plaintiffs allege that defendant committed fraud by falsely representing that it would display and maintain signs advertising plaintiffs' workshop if plaintiffs accepted a room at the nearby Embassy Suites and did not pursue immediate injunctive relief. Instead, according to plaintiffs, Hotel employees later removed, or acquiesced in, the removal of the signs.

To assert a claim for fraud in Georgia, a plaintiff must show: "(1) false representation by defendant; (2) scienter; (3) intent to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff." *Next Century Commc'ns Corp. v. Ellis*, 318 F.3d 1023, 1027 (11th Cir. 2003) (citation and internal quotation marks omitted). In its Order

AO 72A
(Rev.8/82)

denying defendant's Motion to Dismiss, the Court ruled that, although plaintiffs had shown reliance,[14] thus fulfilling one prong of the test, the record lacked details sufficient to determine whether plaintiffs could prove that defendant possessed an intent not to maintain and display the signs at the time it agreed to post those signs. (See Aug. 13, 2007 Order [18] at 24 n.10.) The Court allowed plaintiffs to file an Amended Complaint [20] correcting those defects, stressing that plaintiffs needed to (1) allege who affirmatively agreed to maintain the three signs at the Hotel; (2) explain in what way any representation by that person(s) was false; and (3) identify what defendant obtained as the consequence of the fraud. (See Aug. 13, 2007 Order [18] at 23.)

In their Amended Complaint [20] responding to the Court's Order [18], plaintiffs identified the Hotel general manager, a Mr. Boss, as the person who made the false statements: "I will make sure the signs are up" and "[W]e'll . . . make sure your signs are displayed." (Am. Compl. [20] at ¶¶ 8-9.) Plaintiffs also stated that "at the time Mr. Boss made the statement[s], he had no present intention of fulfilling

---

[14] The Court stated that plaintiffs' claim that they decided not to pursue immediate legal action in the form of injunctive relief in return for defendant's promise to maintain and display the three signs constituted justifiable reliance. (See Aug. 13, 2007 Order [18] at 24 n.10.)

AO 72A
(Rev.8/82)

the promise." (*Id.* at ¶ 12.)

It is well-settled that, in order to show fraud, a plaintiff must demonstrate that the promisor had a present intent not to perform. *Edwards v. Cent. Ga. HHS, Inc.*, 253 Ga. App. 304, 305 (2002). *See also Equifax, Inc. v. 1600 Peachtree, L.L.C.*, 268 Ga. App. 186, 195 (2004) (affirming summary judgment on fraud claim where plaintiff failed to prove that defendant lacked present intent to perform, court held that actionable fraud does not result from a mere failure to perform alleged promises because "[o]therwise any breach of a contract would amount to fraud" (citation and internal quotation marks omitted)); *Buckley v. Turner Heritage Homes, Inc.*, 248 Ga. App. 793, 795 (2001) (same).

Plaintiffs cannot prove that, at the time he promised to display the signs, Mr. Boss had no intention of doing so. As a result, Boss merely made a promise to perform an action in the future, and while his failure to keep his promise may constitute a breach of contract, it does not constitute fraud. Accordingly, defendant's Motion for Summary Judgment [90] is **GRANTED** as to the fraud claim.

## CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment [90] is **GRANTED in part** and **DENIED in part**. It is **DENIED** as to the breach of contract and promissory estoppel claims and **GRANTED**

AO 72A
(Rev.8/82)

as to the fraud claim.

SO ORDERED, this 22 day of September, 2009.

JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)